UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARNELL BROWN,

    Plaintiff,

v.                           CAUSE NO. 3:22-CV-913-DRL-MGG

INDIANA DEPT OF CORR. *et al.*,

    Defendants

OPINION AND ORDER

Darnell Brown, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Brown is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Brown is an inmate at Westville Correctional Facility. He claims that in June 2021, his dormitory was placed on lockdown to an incident involving two other inmates. On June 20, 2021, the fourth day of the lockdown, some of the inmates began to "seek an

answer" about when the lockdown was going to be lifted. It was Father's Day, and the lockdown was apparently interfering with visits. He claims a group of inmates were speaking with Lieutenant Crittenden (first name unknown) in the dayroom about the lockdown. Mr. Brown came into the dayroom to get ice, and also "to see what the Lieutenant had to say about the lockdown." The situation somehow escalated, and the Lieutenant allegedly threatened to spray the inmates with mace if they did not leave. Mr. Brown decided to leave and go back to his wing, but at that point Lieutenant Crittenden and three other officers, Officer Stepp, and Sergeant Patrick (first name unknown) all began spraying the inmates with mace.[1] Mr. Brown claims that he was "quietly and peacefully" walking to his wing when he got sprayed in the face and body, and that no one else was being violent so as to warrant the use of the mace.

He claims the officers then handcuffed all 27 inmates who had been in the dayroom and forced them to sit on their knees facing a wall for 3-4 hours. The inmates were allegedly not allowed to decontaminate themselves, and Mr. Brown claims his "body was burning" and he had difficulty breathing because of the mace. He claims Nurse Loop (first name unknown) came to check on the inmates while they were sitting against the wall; he claims he told her he was having difficulty breathing. She stopped and took his blood pressure and then allegedly told him, "You can breathe." He was then sent to segregation along with the other inmates. He claims he saw Warden John Galipeau while he was in segregation and told him he still had not been given an

---

[1] He claims Sergeant Miller (first name unknown) also sprayed the mace, but he does not list this individual as a defendant.

opportunity to wash off the mace, but the Warden allegedly ignored him. He claims that he was allowed to take a shower and return to his cell around 12 p.m. the day after this incident, meaning that he "went almost 24 hours with the [mace] on his entire body including his face and genitals."

Mr. Brown was later found guilty by hearing officer Margarita Velazquez of engaging in a group demonstration/work stoppage in violation of prison disciplinary rules. He was sanctioned "with loss of credit time that was suspended." He claims that Indiana Department of Correction rules and procedures were not followed in connection with the disciplinary proceeding. He believes the guilty finding has prevented him from seek a modification of his sentence "[a]s judges regularly look at an inmate's conduct history when granting or denying modifications." Based on these events, he sues the IDOC, its Commissioner, the Warden, various high-ranking prison officials, the correctional officers involved in the incident in the day room, Ms. Velasquez, and Nurse Loop. He seeks monetary damages and other relief.

Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

The court is cognizant that Mr. Brown describes a potentially volatile situation with a large group of inmates in the dayroom, and further factual development may show that the officers acted reasonably under the circumstances. But at this stage, the court must afford Mr. Brown all reasonable inferences. Giving him the inferences to which he is entitled at this stage, he has plausibly alleged that Lieutenant Crittenden, Officer Stepp, and Sergeant Patrick used more force than was necessary under the circumstances. Specifically, he alleges that even though he complied with the order to leave and was "peaceably" walking out of the dayroom, he was sprayed with mace. Thereafter, the officers forced him to sit on his knees for 3-4 hours with the mace still burning his face and body, though he was handcuffed and allegedly not posing any threat. He further claims that he told Warden Galipeau several hours later that he had not been given any opportunity to wash off the mace, but the Warden allegedly ignored him, leaving him to be covered in mace for several more hours. The complaint can be read to allege that the Warden allowed him to remain covered in mace to prolong his suffering. He has alleged enough to proceed against these Defendants under the Eighth Amendment.

As to Commissioner Robert Carter, Assistant Deputy Warden Kenneth Watts, Complex Director Philip Sonnenberg, and Sergeant Brazzle (first names unknown), there is insufficient factual content from which the court can plausibly infer that they were personally involved in these events. They cannot be held liable for damages solely because they supervise other correctional staff, as "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

It appears Mr. Brown may be trying to sue them in their official capacity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Such claims are unavailing. "[N]either a State nor its officials acting in their official capacities are 'persons'" that can be sued for constitutional violations under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). For this same reason, his claim against the IDOC, a state agency, cannot proceed. *See id.* at 64. Additionally, any claim for damages against the IDOC would be barred by the Eleventh Amendment. *De Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019). An official capacity claim could proceed for prospective injunctive relief, but Mr. Brown only describes a past injury occurring in 2021 with no indication he is being subjected to an ongoing violation of his constitutional rights.[2] *See Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018); *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). These defendants will be dismissed.

He also sues Nurse Loop, presumably for the denial of medical care. Under the Eighth *Amendment*, inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a

---

[2] If he is trying to seek prospective injunctive relief on behalf of other inmates who were involved in these events, he has no standing to do so. *Massey v. Helman*, 196 F.3d 727, 739–40 (7th Cir. 1999).

substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court will "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and quotations omitted).

Additionally, it is not enough that a medical professional be mistaken in his or her judgment. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

Here, the only allegation against Nurse Loop is that Mr. Brown told her he was having breathing difficulties as he was sitting against the wall with the other inmates and she did not provide him treatment. However, it can be discerned from his allegations that Nurse Loop did not ignore him when he raised a concern about his breathing. Instead, she stopped, interacted with him, and took his blood pressure. Her evaluation was that he was not having a breathing emergency despite the discomfort he may have been feeling from the effects of the mace. He does not allege that he ever obtained medical care for any breathing issues, and instead it appears the symptoms resolved on their own as the effects of the mace dissipated. Based on what he has alleged, the court cannot

plausibly infer that Nurse Loop was deliberately indifferent to a serious medical need in violation of the Eighth Amendment.

Finally, he sues the hearing officer, Ms. Velasquez, for allegedly violating IDOC procedures at the disciplinary hearing and finding him guilty "despite clear camera evidence that disputes the facts of the write-up." If he is claiming a violation of IDOC procedures or other state law, this does not give rise to a claim against Ms. Velasquez under 42 U.S.C. § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). He may be invoking the federal due process clause, but due process protections are only implicated when a liberty interest is at stake. *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right."). The loss of earned credit time would trigger due process protections, but Mr. Brown alleges that the hearing officer suspended the earned credit time sanction. Because he didn't actually lose any earned time credits, he was not entitled to due process protections. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000).

He believes that the guilty finding negatively impacted his ability to seek a sentence modification under state law. Though a state may create a liberty interest through its own statutes or regulations, there is no due process protection for state action that "merely might affect the duration of the sentence." *Id.* (citation omitted). Under Indiana law, sentence modifications are highly discretionary, and it is "not inevitable"

that Mr. Brown would have been granted one even in the absence of the disciplinary infraction. *Id.*; *see also Newman v. State*, 177 N.E.3d 888, 891 (Ind. Ct. App. 2021) (observing that trial court has substantial discretion in ruling on motion to modify sentence). The mere potential for obtaining a modification of his sentence did not trigger due process protections. *Zimmerman*, 226 F.3d at 572; *Roach v. Indiana Dept of Correction*, No. 3:21-CV-371-DRL-MGG, 2022 WL 1184559, 2 (N.D. Ind. Apr. 20, 2022) (loss of inmate's job which potentially impacted his ability to obtain a credit toward his sentence did not create a due process liberty interest in light of the discretionary nature of the credit).

Mr. Brown also spent one day in segregation as a result of this incident, although he did not have a general right to remain in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). Long-term segregation involving significantly harsher conditions can trigger due process protections, but inmates have no protected liberty interest in avoiding short-term transfer to segregation, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008), or in avoiding restrictions "that do not substantially worsen the conditions of confinement," *White v. Scott*, 849 F. Appx. 606, 608 (7th Cir. 2021). Mr. Brown states that he was housed with another person in a "one man" cell during the day he was in segregation, but this very brief inconvenience is not the type of severe deprivation that would create a liberty interest. *Sandin*, 515 U.S. at 475. Therefore, he has not stated a plausible constitutional claim against Ms. Velazquez.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Lieutenant Crittenden, Officer Stepp, and Sergeant Patrick (first names unknown) in their personal capacity for

8

monetary damages for using excessive force against him in violation of the Eighth Amendment on or about June 20, 2021, by allegedly spraying him with mace and forcing him to sit on the floor covered in mace for 3-4 hours even though he was not being disruptive;

(2) GRANTS the plaintiff leave to proceed against Warden John Galipeau in his personal capacity for monetary damages for allegedly ignoring him when he asked to wash the mace off his face and body in violation of the Eighth Amendment;

(3) DISMISSES Indiana Dept. of Corr., Robert Carter, Margarita Velazquez, Kenneth Watts, Philip Sonnenberg, Sergeant Brazzle, and Loop as defendants;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lieutenant Crittenden, Officer Stepp, Sergeant Patrick, and Warden John Galipeau at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(7) ORDERS Lieutenant Crittenden, Officer Stepp, Sergeant Patrick, and Warden Galipeau to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

February 23, 2023         *s/ Damon R. Leichty*
                          Judge, United States District Court